STATE OF NEBRASKA, APPELLEE, V. AMERICAN THEATRE CORPORATION, A NEBRASKA CORPORATION, DOING BUSINESS AS PUSSY CAT THEATRE, APPELLANT.

244 N. W. 2d 56

Filed July 7, 1976. No. 40513.

Robert Eugene Smith, Gilbert H. Deitch, Michael Clutter, and Stern, Harris, Feldman, Becker & Thompson, for appellant.

Paul L. Douglas, Attorney General, Herbert M. Fitle, and Gary P. Bucchino, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

SPENCER, J.

Defendant-appellant appealed its conviction after a jury trial in the municipal court of Omaha of distributing obscene materials at the Pussy Cat Theatre in Omaha, Nebraska. Appeal on the record to the District Court resulted in an affirmance. Defendant now appeals to this court. We affirm.

This case involves seven counts of distributing obscene materials. Seven different publications are involved. The testimony established the alleged offenses occurred between April 7 and April 10, 1975. The publications were wrapped in clear cellophane, so that it was impossible to page through them. Their covers were open to view to prospective purchasers. Both covers in all vol-

umes depicted sexual acts as well as displaying the genitals of the persons involved.

The books have titles which in themselves may be calculated to appeal to the prurient interest. They are as follows: "Cum Crazy"; "Meat People"; "She Couldn't Believe She Ate the Whole Thing"; "Stick Together"; "Aroused Mates"; "Double Stick"; and "Mom's Taste for Cock."

"Cum Crazy" depicts acts of sexual intercourse, masturbation, fellatio, and cunnilingus.

"Meat People" contains pictures of intercourse, fellatio, and cunnilingus. The written matter is a discussion of adultery and sexual self-realization.

"She Couldn't Believe She Ate the Whole Thing" depicts masturbation, lesbian foreplay, intercourse, fellatio, and cunnilingus. The written matter contains a discussion of lesbianism, incest, and suburban "swinging."

"Stick Together" depicts various acts of homosexual masturbation, fellatio, and sodomy. The written material is a discussion of homosexual acts.

"Aroused Mates" pictures intercourse, fellatio, and cunnilingus. The text purports to be a history of fornication and adultery law, with citations from sex studies and the case law of several states.

"Double Stick" pictures acts of homosexual fellatio and sodomy. The written matter is a narrative of a homosexual Kansan who is on a visit to the west coast.

"Mom's Taste for Cock," a paperback book, contains several pictures of sexual intercourse, fellatio, and cunnilingus. The written material is an explicit narrative of a woman's sexual experiences with men, women, children, and a dog. The language is offensive. The text is obscene to the point of depravity.

In every instance the pictures have little or no connection with the text material. There is no attempt in any way to relate the pictures to the text. In most instances the pictures do not even relate to the sexual acts referred to in the text.

Defendant alleges five assignments of error. The fifth assignment is in three parts. Only two assignments are discussed in the briefs. Pursuant to our rules, we consider only those argued by the defendant in its brief. Rule 8a(3), Revised Rules of the Supreme Court, 1974.

Defendant first argues that the publications are not as a matter of applicable constitutional law obscene and are protected expression under the First and Fourteenth Amendments to the United States Constitution. We are in complete disagreement with defendant's contention.

Every one of the publications involved herein is clearly embraced within the test of obscenity delineated in Miller v. California (1973), 413 U. S. 15, 93 S. Ct. 2607, 37 L. Ed. 2d 419. The average person applying contemporary community standards would find that each magazine taken separately appeals to the prurient interest. Each of them depicts or describes in a patently offensive way sexual conduct specifically covered by our state law as authoritatively construed.

Even a casual review of each publication is sufficient to indicate that it was not intended to promote and definitely lacks any serious literary, artistic, political, or scientific value. Actually, each of them is utterly without redeeming social value, if such a test were still necessary.

Each of the publications is embraced within one of the two suggested standards enunciated in Miller. They either contain patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated; or there is a patently offensive representation or description of masturbation, excretory functions, and lewd exhibition of genitals. If there is any serious literary, artistic, political, or scientific value in any of the seven publications, we are unable to find it. This, at the very least, is a minimum requirement to merit First Amendment protection. We have no hesi-

tancy in finding every one of the publications obscene as a matter of law.

Defendant's second argument is directed to an alleged insufficiency as a matter of law to establish the element of scienter, to the minimum constitutional standards enunciated in Hamling v. United States (1974), 418 U. S. 87, 94 S. Ct. 2887, 41 L. Ed. 2d 590.

Defendant, in support of this contention, quotes the following from Hamling v. United States, *supra*: " 'We think the "knowingly" language of 18 U. S. C. § 1461 and the instructions given by the District Court in this case satisfy the constitutional requirements of scienter. It is constitutionally sufficient that the prosecution show that a defendant had knowledge of the contents of the material he distributes, and he knew the character and nature of the materials.' "

We would add the next two sentences following the material quoted: "To require proof of a defendant's knowledge of the legal status of the materials would permit the defendant to avoid prosecution by simply claiming that he had not brushed up on the law. Such a formulation of the scienter requirement is required neither by the language of 18 U. S. C. § 1461 or by the Constitution."

Here the defendant is a corporation so the knowledge must necessarily be that of its officers and employees. The police officers testified that the materials in question were enclosed in clear plastic covers and displayed on the shelves at defendant's place of business. One could not page through the magazines but could see the covers. As suggested heretofore, these covers portrayed specific sexual acts and prominently displayed the genitals of the participants. Anyone looking at the front and back covers of the publications, particularly in light of the titles given to the publications, would be readily apprised that the contents of the magazines were obscene.

The following from State v. American Theater Corp. (1975), 193 Neb. 289, 227 N. W. 2d 390, a case involving

this same defendant, is pertinent herein: "We said in State v. Jungclaus (1964), 176 Neb. 641, 126 N. W. 2d 858: 'A seller of magazines and phonograph records is ordinarily presumed to know what he is offering for sale, although it is not universally so. The operator of a book store, for instance, would not be presumed to know of every isolated obscene statement in the hundreds of books that he had for sale. But in a situation, as here, where the covers of the magazines, front and back, are occupied with pictures of nude women in various poses (in the instant case individuals engaged in sexual acts or prominently displaying their genitals), it can hardly be said that the jury could not infer knowledge of their contents by the defendant and an intent to sell obscene materials.' Though the standard for judging obscene materials has altered somewhat since the ruling in Jungclaus, we feel that the inference with regard to the knowledge of the contents of the material found in the defendant's possession, considering its nature, the manner of its display and sale, is still a proper one."

Section 28-926.17, R. S. Supp., 1974, provides in part as follows: "(1) Any person who *knowingly* * * * (b) publishes, circulates, sells * * * or distributes or exhibits any obscene material * * * shall, upon conviction thereof, be punished by imprisonment for not more than one year, or by a fine of not more than one thousand dollars, or by both such fine and imprisonment." (Emphasis added.)

By the use of the word "knowingly" the Legislature has made scienter a necessary element in any prosecution under the Nebraska obscenity law. Section 28-926.11 (4), R. S. Supp., 1975, specifically defines the word "knowingly" to mean: "Knowingly shall mean having general knowledge of, or reason to know, or a belief or reasonable ground for belief which warrants further inspection or inquiry or the character and content of any material, taken as a whole, described in this section, which is reasonably susceptible to examination by the defendant; * * *."

The word "knowingly" as used in the Nebraska statutes satisfies the constitutional requirement of scienter, required by Hamling v. United States, *supra,* and we have no question that it was present in this case.

A review of the facts herein is sufficient to show that the factual details have not changed since defendant's appeal in State v. American Theater Corp. (1975), 193 Neb. 289, 227 N. W. 2d 390. In fact, a review of the exhibits herein indicates that the defendant has reached new depths of depravity since that case. They are in fact the most obscene we have been called upon to review. If they are not hard-core pornography as repeatedly described by the United States Supreme Court, we are at a loss to know what pornography is. The publications are obscene whether we use the Miller test or the Roth-Memoirs test. As suggested before, even applying the pre-Miller test, they are utterly without redeeming social value.

Defendant's assignments of error are definitely without merit. The judgment is affirmed.

AFFIRMED.